Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9740 | **DATE** | 1/27/2003 |
| **CASE TITLE** | Mendenhall vs. Mueller Streamline Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 3/5/2003 at 9:30 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** Defendant's motion (Doc 15-1) for summary judgment is granted in part and denied in part. We grant the motion for summary judgment on the race discrimination claim. We deny the motion for summary judgment on the retaliation claim and the hostile work environment claim. All other pending motions are rendered moot. Pretrial order to be filed on or before March 5, 2003.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JAN 28 2003 date docketed | |
| ✓ | Docketing to mail notices. | | | 34 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | | |
| | SCT courtroom deputy's initials | 03 JAN 27 AM 10:46 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

ANDRE MENDENHALL SR., )
)
      Plaintiff, )
)
vs. ) 01 C 9740
)
MUELLER STREAMLINE CO., )
)
      Defendant. )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter is before the court on Defendant Mueller Streamline Co.'s ("Mueller") motion for summary judgment. For the reasons set forth below we deny the motion in part and grant the motion in part.

## BACKGROUND

Plaintiff Andre Mendenhall, Sr. ("Mendenhall"), a black male, began working for Mueller as a warehouse worker at Mueller's Addison location in 1988. His duties included picking orders, loading trucks, putting away stock, and cleaning. In October 1999, Deborah Jones ("Jones") became Mendenhall's supervisor. Mendenhall claims that at first Jones assigned him to straighten out the stock which was easier work than picking orders, but that in June 2000 Jones stopped assigning him to straighten out the

stock. Mendenhall also claims that from April 26, 2001 until he was terminated, he saw the letters "n-i-g-a" written in graffiti in approximately seventeen different locations at work. He complained to Jones about the graffiti and, according to Mendenhall, Jones accused him of writing the graffiti to bolster his claims of racial harassment. Mendenhall also claims that the graffiti sometimes remained on the wall for months after he notified Jones. There was an isolated incident at the warehouse in January 2001 when feces was smeared on Mendenhall's locker in the men's bathroom. Mendenhall also claims that he was discriminated against when he was not chosen by Jones for the "lead" position in the warehouse which involved additional interaction with will call and with will call customers.

Apparently, during Mendenhall's employment at Mueller there was an ongoing feud between two groups of workers at the warehouse. Mendenhall was friends at work with Mr. Kegan Peart ("Peart") and Mr. Dennis Walker ("Walker"). According to Mendenhall, two of his co-workers that are Hispanic, Eliseo Covarubbias ("Covarubbias") and Ernesto Reyes ("Reyes"), regularly called Mendenhall names in Spanish such as monkey and dog, and made insulting references to his mother and to black people. At first Mendenhall did not understand what names they were calling him, but another coworker eventually explained to Mendenhall what they were saying. Covarubbias and Reyes claim that Mendenhall called them names also and made

derogatory remarks about Hispanics, although Mendenhall denies making such statements. According to Mendenhall, he repeatedly complained to Jones, but Jones did nothing to stop the name calling. In June 2000 Jones gave Mendenhall a disciplinary reprimand because he was working too slowly. On October 24, 2000 Jones issued a disciplinary warning to Mendenhall because he took a magazine in the restroom at work while on the clock and remained in there for fifteen minutes. On April 19, 2001 Jones suspended Mendenhall for making a gun gesture with his hand towards Covarubbias and Reyes. On August 28, 2001 Mendenhall had not finished picking an order by 11:15 A.M. and Jones thought he was working too slowly. She proceeded to try and duplicate all the picking movements that Mendenhall would have had to make in picking the order and claims that she completed in forty minutes what it took Mendenhall three hours to pick. She fired Mendenhall that day for working too slowly. On August 31, 2001 Mendenhall filed a charge with the EEOC claiming racial discrimination. He claimed in the charge that he had been repeatedly subjected to "racially derogatory actions" and that he complained to his supervisor who did nothing to stop the problems. He claimed in the charge that he was terminated and he was suspended in April 2001 because of his race. Mendenhall's complaint is brought pursuant to 42 U.S.C. § 2000e *et seq.* and consists of a hostile work environment claim, a race discrimination claim, and a retaliation claim.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole in a light most favorable to the nonmoving party and draw all reasonable inferences that favor the nonmoving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

Mueller states on the first page of its reply that it is "undisputed" that, although Covarubbias and Reyes allegedly called Mendenhall names, Mendenhall called Covarubbias and Reyes names as well. Mueller attempts to use this assertion to argue that, since Mendenhall participated in the name calling, he was partially responsible for the hostile work environment. It is not clear if Mueller purposely tried to deceive the court, but a close look at the 56.1 statements and responses shows that Mueller has not offered evidence to support its assertion or show that it is undisputed. In Mueller's 56.1 statement of facts, Mueller asserts that Mendenhall's coworkers Carlos Chavez and Reyes "stated" that they heard Mendenhall call Covarubbias names, and Mueller supports the statement of fact with citations to the Chavez and Reyes affidavits. Mueller also asserts in its statement of facts that Covarubbias "testified" that Mendenhall called him names. Mendenhall, in his responses to Mueller's statement of facts, admits that the facts alleged by Mueller were consistent with the affidavits and depositions of the above mentioned persons. Mueller cites Mendenhall's 56.1(b)

-5-

responses to show that the issue of whether Mendenhall called Covarubbias and Reyes names is undisputed, but Mendenhall's 56.1(b) responses do not prove that point.

Mueller apparently misunderstands the purpose of a motion for summary judgment. At times Mueller gives recognition only to the evidence that supports his position and fails to recognize legitimate factual disputes. A summary judgment motion is not a trial on the merits and Mueller is only entitled to summary judgment if there is no genuine dispute as to material facts and if no reasonable jury could find for Mendenhall. *Insolia v Philip Morris, Inc.*, 216 F.3d at 599. One example of Mueller's selective recognition is where Mueller claims on the first page of its reply that it is "undisputed" that the graffiti in the warehouse was removed each time within a day or two after it appeared. However, Mendenhall and Peart indicated that the graffiti remained untouched for months after it appeared. Again a close look at Mueller's statement of facts and Mendenhall's response, which Mueller cites, shows that Mendenhall admitted that several employees at the Addison location, from whom Mueller has obtained affidavits, have "confirmed" that the graffiti was removed within a day or so after it appeared. Mueller did not assert and Mendenhall did not admit that the graffiti was in fact removed that quickly. It is plain that the amount of time it took Jones to remove graffiti after it appeared in the warehouse is a legitimately contested issue.

We also note that Mueller has filed a "Reply in Support of Its Rule 56.1 Statement of Undisputed Material Facts" in which Mueller responds to Mendenhall's 56.1(b) responses. Rule 56.1 does not provide for such a reply and, as it is inappropriate, we shall order it stricken. Mueller has also filed a motion to strike which we will take under advisement.

I. Retaliation Claim

Mueller claims that Mendenhall cannot include a retaliation claim in his complaint because retaliation was not specifically mentioned in his EEOC charge. A plaintiff cannot assert allegations in a complaint that were not included in the plaintiff's EEOC charge. *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002). However, a plaintiff can assert allegations in the complaint that were not expressly stated in the EEOC charge if the allegations are "like or reasonably related to the EEOC charges" and the allegations in the complaint could be expected to come to light after an EEOC investigation of the charge. *Id.* (quoting *Harper v. Godfrey Co.*, 45 F.3d 143, 147-48 (7th Cir. 1995)). The separate allegations in the complaint must, at the very least, involve "the same conduct and implicate the same individuals" that are expressly included within the EEOC charge. *Id.* Mendenhall complained in the EEOC charge that he was subjected to "racially derogatory actions." After the EEOC charge states that Mendenhall complained to his supervisor about the "racially

derogatory actions", the charge alleges that he was wrongfully suspended and eventually terminated. Although, Mendenhall did not check the box entitled "retaliation" on the EEOC charge form, the retaliation claim is encompassed within the language of the charge written by Mendenhall, or at the very least, the retaliation claim is like and reasonably related to the factual allegations included within the EEOC charge. The retaliation claim involves parties and conduct that are mentioned in the EEOC charge and thus the retaliation claim is within the scope of the allegations in the EEOC charge. Therefore, we deny the motion for summary judgment on the retaliation claim.

## II. Time Barred Allegations

In Illinois an employee must file an EEOC charge within 300 days of the alleged discriminatory conduct or else any claims based on that conduct will be time barred. *Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 893 (7th Cir. 2001). Mendenhall filed his EEOC charge on August 31, 2001. Mueller argues that Mendenhall cannot base his discrimination or harassment claims on conduct such as the disciplinary action taken against Mendenhall in June 2000 for working too slowly and the disciplinary action taken against Mendenhall on October 24, 2000 for spending too much time in the bathroom. We agree.

## III. Hostile Work Environment

Mueller argues that Mendenhall does not have sufficient evidence to show a hostile work environment. Under Title VII an employer is prohibited from maintaining a workplace that is permeated with "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment...." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (citations omitted)(quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65-67 (1986)). Factors considered in determining whether there is a hostile work environment include: 1) the "frequency of discriminatory conduct," 2) "its severity," 3) whether conduct is "physically threatening or humiliating" or merely offensive, 4) whether conduct "unreasonably interferes with [the plaintiff's] work performance," and 5) the "social context in which events occurred." *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 463 (7th Cir. 2002); *Cerros v. Steel Techs.*, 288 F.3d 1040, 1045-46 (7th Cir. 2002). The plaintiff must show that he subjectively found the work environment hostile or abusive and that a reasonable person would have found it to be hostile or abusive. *Hilt-Dyson*, 282 F.3d at 463. The plaintiff must also show that the harassment was based on a characteristic that placed the plaintiff within a protected class and that there is some basis to hold the employer liable for the harassment. *Cerros*, 288 F.3d at 1045. An employer is generally strictly liable for harassment initiated by a supervisor, *Mason v. Southern Illinois Univ. at Carbondale*,

233 F.3d 1036, 1043 (7th Cir. 2000), but an employer is only liable for harassment made by the plaintiff's coworkers if the employer was negligent in failing to discover the harassment or in its efforts to prevent further harassment. *Id.*

Mendenhall complains about an incident where feces was smeared on his locker in the mens' restroom. However, all the lockers in the restroom were smeared and Mendenhall has not shown that the incident had anything to do with his race. According to Mendenhall, he was also subjected to name calling by Covarubbias and Reyes on a daily basis. The name calling appeared to be directed at Mendenhall's race. Mendenhall claimed in his deposition that he was called a "black monkey" and that he was told "all you people lazy." Mendenhall also claims that after April of 2001 and up until his termination, he noticed the letters "n-i-g-a" written in graffiti throughout the warehouse in approximately seventeen different locations. According to Mendenhall, Peart, and Walker, Jones did not remove the graffiti when she was told about it and the graffiti would remain undisturbed for months. Mendenhall also claims that when he complained to Jones about racial discrimination, Jones told him that "I own you when you are here; this is not a democracy, I control you, this is my warehouse." Mendenhall also claims that Jones said to him, "I am sick and tired of this discrimination bullshit of yours" and "you can sue all you like, go to the EEOC, this company's got deep pockets."

Also, according to Mendenhall, when he complained to Jones about the graffiti, she accused him of writing the graffiti to bolster his discrimination claims. The alleged statements made by Jones added to Mendenhall's humiliation and feeling of hostility against him because he was black. It may be inferred that Jones let Mendenhall know that she did think his complaints of harassment were worthy of respect and that she was not going to do much stop the harassment. The harassment alleged by Mendenhall initiated by coworkers and by Jones was directed at Mendenhall personally in his presence, usually in the presence of other coworkers, and was frequent and humiliating. Viewing the evidence in a light most favorable to Mendenhall, we think that, for the purpose of this summary judgment motion, Mendenhall has shown that there are disputed issues of material facts.

Mueller would be liable for Jones' alleged hostile statements, but the question remains whether Jones was negligent in preventing further harassment after Mendenhall complained about harassment by his coworkers. After Mendenhall complained about the name calling incidents, Jones had a talk with each of the parties involved and told them that she would not tolerate such behavior. However, according to Mendenhall, the name calling continued and every day up until he was terminated they were "constantly bothering" him. Mendenhall also claims that one time when he complained that the name calling had not stopped despite Jones warnings, Jones was

surprised and said that she thought that Reyes and Covarubbias would have tired of the name calling by then. Viewing the evidence in the light most favorable to Mendenhall, Jones apparently did not take the name calling incidents seriously and viewed them as nothing more than a childish feud that would eventually play itself out. For the purposes of this summary judgment motion, Mendenhall has shown that Jones was negligent in not preventing the name calling from continuing after Mendenhall complained to Jones. For the reason that material evidence is in dispute, we deny the motion for summary judgment on the hostile work environment claim.

IV. Race Discrimination

Where an employer in a Title VII case brings a motion for summary judgment, the plaintiff has two approaches that can be used to defeat the motion. *Pafford v. Herman*, 148 F.3d 658, 665 (7th Cir. 1998). Under the "direct" approach, the plaintiff can show through direct or circumstantial evidence that the alleged harmful action of the employer was "motivated by an impermissible purpose, such as her race or national origin." *Id.* Under the "indirect" approach the plaintiff must establish a *prima facie* case which will allow an inference of discrimination. *Id.* To establish a *prima facie* case of race discrimination a plaintiff must show: "(1) that she was a member of a protected class; (2) that she was performing her job satisfactorily; (3) that she experienced an adverse employment action; and (4) that similarly situated individuals

were treated more favorably." *Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002). If a *prima facie* case is established, then there is a rebuttable presumption of discrimination and the employer is required to offer a "legitimate, non-discriminatory reason for the adverse employment action." *Cianci v. Pettibone Corp.*, 152 F.3d 723, 726 (7th Cir. 1998). If the employer provides such a reason, the plaintiff must then show that the reason alleged by the employer is merely a pretext for discrimination. *Id.*

Mendenhall has not provided sufficient evidence to proceed under the direct approach and thus he will need to turn to the indirect approach. Mendenhall's race discrimination arguments are deficient because they do not sufficiently focus on any of the alleged adverse employment actions taken against him. Instead Mendenhall's brief jumps back and forth between a variety of alleged adverse employment actions taken against him. This results in a patchwork of arguments touching momentarily on each of the above mentioned four elements. For example, Mendenhall asserts that he was terminated by Jones and he argues that Jones' reason for firing him was a pretext. However, he does not provide evidence to show that similarly situated employees outside the protected class that were working too slow or whose work performance was poor were not disciplined. Mendenhall complains about Reyes not being disciplined for his poor work performance when Reyes was caught reading in the bathroom, but

as stated before, that claim would be time-barred. Also, Mendenhall has not provided any reliable evidence to show that Reyes, like Mendenhall, was on the clock while he was in the bathroom. Mendenhall and Walker's belief that Reyes was on the clock is nothing more than speculation, and Mendenhall has provided no other evidence to back up his assertion.

Mendenhall also claims that his suspension for making threatening gestures at Covarubbias was a material adverse employment action. However, Mendenhall admits in his 56.1(b) response that Jones terminated Covarubbias in September of 2002 because he admitted that he either threatened or struck Walker. Also, Mendenhall has not provided any evidence to show that Jones treated more favorably other employees outside the protected class that threatened coworkers or otherwise violated employment policies.

The only adverse employment action for which Mendenhall has provided any reliable evidence to show that a similarly situated employee was treated differently is the failure to assign Mendenhall the lead position. Reyes initially held the same position as Mendenhall at the warehouse. Reyes was not black and he had participated, as did Mendenhall, in what Jones deemed the childish name calling feud at the warehouse. Mendenhall applied for the lead position, but Reyes was chosen for the lead position instead of Mendenhall.

It is not clear that an assignment to the lead position would have been considered a promotion or that a failure to be assigned to the lead position would constitute a material adverse employment action. The lead person did not have the right to hire, fire, or discipline other warehouse employees and it had the same pay as the other warehouse positions. *See Traylor*, 295 F.3d at 788 (stating that to be actionable under Title VII the adverse employment action must be material and that not every employment action that makes the employee unhappy is actionable). Also, in regards to the satisfactory performance prong of the *prima facie* case, Mendenhall does not offer any credible evidence to dispute the fact that he made a threatening gun gesture at a coworker. Diane McClendon, who worked in the warehouse office and was not involved in the warehouse feud, witnessed the gesture. Also, Mendenhall was disciplined prior to his termination for working too slowly. Mendenhall's response in his deposition to the accusations that he worked too slowly was that he was not the slowest worker, admitting that he worked slowly. Thus, Mendenhall has not shown that he performed his work satisfactorily.

Even if we viewed an assignment to the lead position as a promotion and considered the *prima facie* elements for such a case, Mendenhall cannot prevail on the race discrimination claim. For a failure to promote claim, to establish a *prima facie* case a Title VII plaintiff must show: "1) that she is a member of a protected group;

2) she was qualified for the position sought; 3) she was rejected for the position; and 4) the employee promoted was not a member of the protected group and was not better qualified than the plaintiff." *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 732 (7th Cir. 2001). Mendenhall applied for the lead position and Reyes, who is not black, was chosen. Jones and Mendenhall dispute whether Mendenhall was qualified for the position and whether Reyes was better qualified. We need not determine this issue here because it is addressed within the following pretext analysis.

Jones offered a non-discriminatory reason for her decision to choose Reyes for the lead position. She claims that she chose Reyes because he was the best qualified. Mendenhall claims that the reason is a pretext. To show a pretext the plaintiff must establish that the given reason is a lie made by the employer to conceal its unlawful discriminatory intentions. *Hasham v. California State Bd. of Equalization*, 200 F.3d 1035, 1045 (7th Cir. 2000). In determining whether there is a pretext, the focus is on the issue of whether the employer intended to lie rather than whether the given reason is ultimately found to be sound. *Essex v. United Parcel Service, Inc.*, 111 F.3d 1304, 1310 (7th Cir. 1997). A plaintiff can show a pretext by presenting "direct evidence that a discriminatory reason motivated the employer's decision or by presenting evidence that the employer's proffered reason is unworthy of credence, thus raising the inference that the real reason is discriminatory." *Id.*

Also, the Seventh Circuit has recently addressed the pretext analysis in *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180-81 (7th Cir. 2002). In *Millbrook* the court held that, where an employer presents as its legitimate non-discriminatory reason for not promoting a plaintiff that the employer promoted the best qualified applicant, the qualifications of the chosen individual and the plaintiff are not evidence of pretext except where the "differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified." *Id.* (quoting *Deines v. Texas Dept. of Protective and Regulatory Services*, 164 F.3d 277 (5th Cir. 1999)). Stated another way, the qualifications are not evidence of pretext unless the plaintiff's credentials "are so superior . . . that no reasonable person" could have chosen the other person over the plaintiff. *Id.*

Jones stated she reviewed the résumés of the applicants for the lead position and that Reyes was the best qualified. According to Jones, Reyes had years of work experience in a leader role. Mendenhall claims that he was better qualified because he spoke English more fluently than Reyes. Mendenhall has not shown that his qualifications were so superior that a reasonable person could not have chosen Reyes instead of him. Neither has he offered any other evidence that would be sufficient to establish that Jones' reason was a pretext. Therefore, Mendenhall has failed to show that the reason Jones gave for assigning Reyes to the lead position was a pretext.

## CONCLUSION

Based on the foregoing analysis we grant the motion for summary judgment on the race discrimination claim. We deny the motion for summary judgment on the retaliation claim and the hostile work environment claim. All pending motions are rendered moot.

_____
Charles P. Kocoras
Chief Judge
United States District Court

Dated: JAN 2 7 2003